# EXHIBIT B

# HEARING ON THE EMPLOYEE RETENTION TAX CREDIT EXPERIENCE: CONFUSION, DELAYS, AND FRAUD

# HEARING

BEFORE THE

## COMMITTEE ON WAYS AND MEANS
## U.S. HOUSE OF REPRESENTATIVES

ONE HUNDRED EIGHTEENTH CONGRESS

FIRST SESSION

———

JULY 27, 2023

———

Printed for the use of the Committee on Ways and Means

**COMMITTEE ON WAYS AND MEANS**

JASON SMITH, Missouri, *Chairman*

| | |
|---|---|
| VERN BUCHANAN, Florida | RICHARD E. NEAL, Massachusetts |
| ADRIAN SMITH, Nebraska | LLOYD DOGGETT, Texas |
| MIKE KELLY, Pennsylvania | MIKE THOMPSON, California |
| DAVID SCHWEIKERT, Arizona | JOHN B. LARSON, Connecticut |
| DARIN LAHOOD, Illinois | EARL BLUMENAUER, Oregon |
| BRAD WENSTRUP, Ohio | BILL PASCRELL, JR., New Jersey |
| JODEY ARRINGTON, Texas | DANNY DAVIS, Illinois |
| DREW FERGUSON, Georgia | LINDA SÁNCHEZ, California |
| RON ESTES, Kansas | BRIAN HIGGINS, New York |
| LLOYD SMUCKER, Pennsylvania | TERRI SEWELL, Alabama |
| KEVIN HERN, Oklahoma | SUZAN DELBENE, Washington |
| CAROL MILLER, West Virginia | JUDY CHU, California |
| GREG MURPHY, North Carolina | GWEN MOORE, Wisconsin |
| DAVID KUSTOFF, Tennessee | DAN KILDEE, Michigan |
| BRIAN FITZPATRICK, Pennsylvania | DON BEYER, Virginia |
| GREG STEUBE, Florida | DWIGHT EVANS, Pennsylvania |
| CLAUDIA TENNEY, New York | BRAD SCHNEIDER, Illinois |
| MICHELLE FISCHBACH, Minnesota | JIMMY PANETTA, California |
| BLAKE MOORE, Utah | |
| MICHELLE STEEL, California | |
| BETH VAN DUYNE, Texas | |
| RANDY FEENSTRA, Iowa | |
| NICOLE MALLIOTAKIS, New York | |
| MIKE CAREY, Ohio | |

MARK ROMAN, *Staff Director*
BRANDON CASEY, *Minority Chief Counsel*

———

**SUBCOMMITTEE ON OVERSIGHT**

DAVID SCHWEIKERT, Arizona, *Chairman*

| | |
|---|---|
| BRIAN FITZPATRICK, Pennsylvania | BILL PASCRELL, New Jersey |
| GREG STEUBE, Florida | JUDY CHU, California |
| CLAUDIA TENNEY, New York | BRAD SCHNEIDER, Illinois |
| MICHELLE FISCHBACH, Minnesota | SUZAN DELBENE, Washington |
| BETH VAN DUYNE, Texas | GWEN MOORE, Wisconsin |
| RANDY FEENSTRA, Iowa | |
| NICOLE MALLIOTAKIS, New York | |

ii

3

# C O N T E N T S

Page

OPENING STATEMENTS

Hon. David Schweikert, Arizona, *Chairman*……………………………………………………….7
Hon. Bill Pascrell, New Jersey, *Ranking Member*……………………………………………......9

Advisory of July 27, 2023 announcing the hearing…………………………………………..........4

WITNESSES

Larry Gray, CPA, *AGC CPA* ……………………………………………………………….............15
Roger Harris, President, Padgett Advisors ……………………………………………………….25
Pat Cleary, President and CEO, *National Association of Professional Employer Organizations (NAPEO)* ………………………………………………………………………………………….35
Linda M. Czipo, President & CEO, *New Jersey Center for Nonprofits* .……….........................46

PUBLIC SUBMISSIONS FOR THE RECORD

Public Submissions………………………………………...............................................99

iii



707 North St. Asaph Street<br>
Alexandria, VA 22314<br>
703-836-0466<br>
www.napeo.org

# The National Association of Professional Employer Organizations (NAPEO) Statement for the Record

## Pat Cleary
## President and CEO

## U.S. House of Representatives
## Committee on Ways and Means
## Subcommittee on Oversight

## Hearing on The Employee Retention Tax Credit Experience: Confusion, Delays, and Fraud

## July 27, 2023

The National Association of Professional Employer Organizations (NAPEO) thanks Chairman Schweikert and Ranking Member Pascrell and members of the Oversight Subcommittee for holding this important hearing on the Employee Retention Tax Credit (ERTC). Today's hearing is critical in shining a light on and getting the Internal Revenue Service (IRS) to do more to ensure small businesses can fully realize the assistance Congress provided in the ERTC. Continuing delays in the IRS's processing of ERTC claims mean that some small businesses that did the right thing and retained their employees during difficult economic times are still waiting for the help they were promised.

NAPEO recently surveyed 43 of its professional employer organization (PEO) members and found among those respondents that nearly 18,000 small business clients are still waiting for the IRS to approve at least $3 billion in ERTC credits that were filed before 2023. That is real money, owed to real employers, who retained real employees—and these figures represent only a fraction of all employers who have yet to receive their credits. How much longer do these small businesses need to wait?

NAPEO represents approximately 230 PEOs that provide payroll, benefits, risk management, regulatory compliance assistance, and other HR services to nearly 200,000 small and mid-size businesses employing four million people. Our members account for more than 90 percent of the industry's $273 billion in revenue. Nearly 15 percent of businesses with between 10 and 99 employees' partner with a PEO.

PEOs are champions for their small business clients and their employees. Through a PEO, the employees of small businesses gain access to Fortune 500 employee benefits such as: health insurance, dental and vision care, life insurance, retirement saving plans, job counseling, adoption assistance, educational benefits, and other benefits they might not typically receive as employees of a small company. And, by

EXHIBIT B<br>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

providing payroll, benefits, and HR services and assisting with compliance issues under state and federal law, PEOs allow small businesses to improve productivity and profitability, to focus on their core mission, and to grow. We appreciate this opportunity to share our views on how to ensure small businesses finally get the critical help Congress provided to keep employees on the job during unprecedented economic turmoil.

## Executive Summary

Congress enacted the ERTC in March 2020 as part of the CARES Act to encourage businesses to keep employees on the payroll during the COVID-19 pandemic. Despite lawmakers' intent that the ERTC provide immediate tax relief to employers experiencing financial harm during the pandemic, tens of thousands of employers are still waiting for the IRS to process their ERTC claims. As most of the country moves on from the pandemic, these employers—many of whom are small businesses—remain in an untenable position as they continue to wait for the IRS to deliver the assistance Congress authorized more than three years ago and to which they are entitled under the law. ***In fact, many of those small businesses are still waiting, in some cases two years or longer (and counting), for their ERTC claims.***

NAPEO's PEO members have seen first-hand the harm that the IRS's long ERTC processing times have wrought on the small businesses they serve, because ERTC funds are vital to keeping the small business afloat. Making things even worse, our members have also witnessed many of their small business clients being preyed upon repeatedly by the so-called ERTC mills whose high-priced business models depend on perpetuating highly questionable—if not fraudulent—ERTC claims. We **share and fully support** the IRS's and this committee's efforts to root out and prevent ERTC fraud. Every fraudulent claim filed by ERTC mills further delays the IRS's ability to review and approve the legitimate ERTC claims NAPEO members have filed for their small business clients. However, it is the very fact of the delay that has breathed life into these ERTC mills. Absent the backlog, they would not exist, preying on small businesses desperate for the funds they were promised.

NAPEO recognizes that the IRS is facing competing and very challenging demands. On the one hand, it is imperative that the IRS process the outstanding ERTC claims as quickly as possible so that businesses receive their much-needed tax refunds. On the other hand, we appreciate that the IRS has a responsibility to watch for potentially fraudulent ERTC claims, which slow processing times and could result in a small business being held liable for the ERTC mill's actions. NAPEO encourages the Oversight Subcommittee to work with the IRS to address both demands. Even more critical is holding the IRS accountable for continuing to ***dedicate additional resources to processing ERTC claims until all older claims filed from 2020-2022 are completely processed and resolved***. While these fly-by-night mill operations continue to prey upon unsuspecting small businesses, PEOs rely on well-established business relationships their small business clients. In addition, the PEO industry has a strong relationship with the IRS, submitting billions of dollars of small business employee's payroll taxes in an accurate and efficient manner. Given these facts, plus the industry's working relationship with the IRS, the Service should prioritize the processing of amended PEO returns, knowing that the odds of fraud are very low, and that thousands of small businesses will be provided their ERTC. If the IRS wishes to help small businesses, they need look no further than processing PEO client ERTC claims.

Multi-year delays of this magnitude in the delivery of small business tax relief cannot be allowed to happen again. In addition to clearing the existing ERTC backlog, NAPEO urges Congress to secure a commitment from the IRS that it will implement the technology needed to prevent a repeat of what

occurred with the ERTC. This needs to include electronic filing and processing capabilities for all employment tax forms and related schedules, especially the amended employment tax returns that today are only available for filing with the IRS on paper.

## Actions Needed Now to Prevent More Harm to Small Businesses

While the pandemic is beginning to feel like a memory, the financial devastation experienced by many small businesses unfortunately continues. NAPEO respectfully asks the Oversight Subcommittee hold the IRS responsible for the following actions:

- **Maintain focus on clearing the existing ERTC backlog.** As the backlog numbers illustrated below indicate, the IRS made significant progress in reducing the ERTC backlog in recent months. But the recent uptick over the past few weeks is a cautionary tale that the backlog concerns are not over. We urge the IRS to continue dedicating additional resources to the backlog until all ERTC claims filed in 2020, 2021, and 2022 have been processed. Once that is accomplished, the IRS must continue to monitor the backlog to ensure that any ERTC claims filed in 2023 or later are being timely processed.

- **Prioritize and commit to fully resolving the oldest ERTC claims.** As discussed below, NAPEO members report that many ERTC claims filed in 2020, 2021, and 2022 remain unresolved, even as the IRS recently reduced the backlog by hundreds of thousands of applications. It is imperative that the IRS complete its review and processing of these older claims as soon as possible. *The IRS's work to clear the backlog of unprocessed returns is not over until the processing is complete.*

- **Help prevent and address bad actors promoting improper ERTC claims.** In serving their small business clients, NAPEO's members have too often had front-row seats in witnessing the many ERTC mills try to take advantage of small businesses by hounding them with promises of tax credits that are too good to be true. PEOs, as well as the many accountants and other tax professionals that serve small businesses, have sounded the alarm on these mills and cautioned their clients to seek trusted advice regarding a potential ERTC claim. NAPEO urges both Congress and the IRS to hold the mills accountable for any actions that harm small businesses and to take steps to reduce the mills' ability to exploit the tax laws in the future.

- **Take steps now to ensure that small businesses never again experience a similar delay in obtaining critical tax relief.** The pandemic laid bare many of the problems with having an antiquated IRS, not least of which are the ERTC delays that are largely attributable to employers having to file their ERTC claims on the paper-only Form 941-X. It is essential that the IRS prioritize making Form 941-X available for electronic filing, and to ensure that robust programming is in place to electronically process all employment tax forms and related schedules, including Schedule R.

## ERTC & PEOs: Helping Struggling Small Businesses

**What PEOs Do**

PEOs provide payroll, employee benefits, and human resource services to almost 200,000 small and mid-sized businesses (what are called "client employers") with four million employees nationwide. When a small business uses a PEO (including an IRS-certified PEO or "CPEO"), the small business no longer files

its own employment tax returns. Instead, the small business' employment taxes are reported together with those of the PEO's other client employers on an "aggregate" employment tax return (Form 941) that is filed by the PEO using the PEO's employer identification number (EIN).

**ERTC and How PEOs Support Small Employers**

Congress enacted the ERTC as part of the CARES Act to encourage businesses to keep employees on the payroll during extreme economic disruption during the COVID-19 pandemic. The ERTC is a credit against payroll taxes that was initially made available with respect to wages paid by eligible employers after March 12, 2020, and before January 1, 2021. The Consolidated Appropriations Act of 2021 (CAA) retroactively made the ERTC available to many more small businesses by eliminating the prohibition on employers claiming the ERTC if they received a covered loan under the Paycheck Protection Program. Congress further expanded and extended the ERTC in the American Rescue Plan Act of 2021 so that it was generally available for wages paid through September 30, 2021.

In 2020, eligible employers could claim a maximum ERTC of $5,000 per employee. In 2021, the potential credit amount was increased significantly so that eligible employers could generally claim up to $7,000 per employee per quarter (for a per-employee maximum ERTC of $21,000 over Q1-Q3 2021). Apart from those limits, there was generally no aggregate cap on the amount of ERTC an eligible employer could claim. (Different rules applied for employers that met the definition of a "recovery startup business.")

*Claiming the ERTC*

Because the ERTC is a credit against payroll tax, it is claimed using the IRS's employment tax system. Instead of creating a separate tax form or process to help streamline ERTC claims, the IRS revised its existing employment tax returns (the quarterly-filed Form 941, for most employers), and required eligible employers to include any ERTC claims on their Form 941 for the applicable calendar quarter(s). Under this system, an employer that was eligible to claim the ERTC for each quarter would have generally needed to claim the credit on six separate Forms 941 (Q2 2020 through Q3 2021).

Unfortunately, many eligible employers were unable to determine their eligibility for the ERTC until after the deadline to file the Form 941. This meant the only option to claim the ERTC was to file an amended employment tax return (Form 941-X) for each quarter in 2020 and 2021 during which they were entitled to the ERTC. Unlike Form 941, which may be filed electronically with the IRS, ***employers must file Form 941-X on paper***.

*Claiming the ERTC on Aggregate Returns*

As described above, many small businesses do not file their own employment tax returns and instead have their employment taxes reported on an aggregate Form 941, including when a small business hires a PEO. When a PEO claims a payroll tax credit on behalf of a client employer, IRS procedures generally require the PEO to file Schedule R (Form 941) to provide client-level information regarding the client employer's tax credit claim.

Because the IRS chose to incorporate the ERTC claims process into existing employment tax reporting procedures, small employers who use PEOs and other aggregate filers were required to claim the ERTC through the aggregate filer's Form 941/941-X. Similar to employers that file their own employment tax

returns, small businesses that use PEOs were often unable to determine their ERTC eligibility in time for the PEO to make a claim on the aggregate Form 941. This resulted in PEOs needing to file numerous aggregate Forms 941-X—sometimes even with respect to the same quarter—to assist their small business clients in claiming a refund for the ERTC.

**ERTC Backlog: Recent Numbers Don't Tell the Whole Story**

Employers' ERTC claims have led to the filing of unprecedented numbers of Forms 941-X with the IRS. The IRS's employment tax systems and procedures were simply not equipped to handle this influx, and it led to an immense backlog of unprocessed Forms 941-X that topped out at a staggering 1,000,000 in April 2023. The chart below illustrates the number of unprocessed Forms 941-X the IRS reported on IRS.gov from September 2022 through July 19, 2023.

*NAPEO-prepared chart based on data provided on IRS.gov (Sept. 28, 2022 – July 19, 2023)*



NAPEO appreciates that, in response to the alarming increase in the Form 941-X backlog throughout the early months of 2023, multiple members of Congress raised this concern with Commissioner Werfel and obtained a commitment from him that the IRS would make substantial progress on reducing the backlog in the coming weeks and months. As the chart above shows, the IRS initially made good on that commitment, reducing the backlog from a high of 1,000,000 down to 374,000 as of June 28, 2023. Since that time, however, the backlog has increased again by 114,000 to 488,000 as of July 19, 2023.

In addition to being concerned over the recent uptick in the backlog numbers, ***NAPEO cautions that the significant reduction in the backlog that took place throughout May and June 2023 does not necessarily mean that the small businesses that have been waiting the longest on their ERTC claims have by now received a refund as a result of this effort***. In fact, NAPEO recently surveyed 43 PEOs and found that nearly 18,000 small business PEO clients are still waiting for the IRS to approve thousands of

claims for ERTC credits from filed in 2020, 2021, and 2022. ***That includes almost 4,000 claims from 2020 awaiting processing.*** Despite the IRS's commitment to processing the Form 941-X backlog on a first-in, first-out basis, this has not resulted in all the earlier-made ERTC claims being resolved first.

**NAPEO's Efforts to Help Small Businesses**
As early as May 2020, NAPEO reached out to the IRS and Treasury Department to sound the alarm on the filing complexity involved with the ERTC and other pandemic tax relief. By March 2021—before many employers had even filed a single ERTC claim—NAPEO was already urging the IRS to dedicate more resources to processing ERTC claims. The many employment tax experts at NAPEO's PEO members recognized at that point that normal IRS procedures on filing and processing employment tax would be insufficient to handle the anticipated ERTC claims.

*Congress Focused on Reducing ERTC Backlog*

NAPEO, its PEO members, and hundreds of small business clients of PEOs have been calling attention to the ERTC backlog, seeking assistance from the IRS, IRS Taxpayer Advocate Service, and members of Congress. Individual NAPEO members have been working with members of Congress to determine the status of ERTC claims. NAPEO members have written Congress and encouraged their clients to do the same – and more than 1,300 small businesses have written to express their frustrations with the delay in processing the ERTC. More than 70 NAPEO members took time from their jobs to visit their representative and senators to urge action on the backlog. Small businesses call NAPEO every day asking for assistance to get their ERTC claim processed. These small business owners are incredibly frustrated and angry. A process that was supposed to quickly get them much needed assistance has turned into a two-to-three-year wait with no way of finding out what happened to their claim.

Congress is likely to continue to use payroll tax credits to assist small businesses. While we are grateful that the IRS has put the necessary resources into clearing the backlog of 941-X filings, it should not have taken three years and a million unprocessed tax forms to get the IRS to act. The inability of the IRS to act quickly, to shift resources to processing these claims, to simplify their processing of these forms, and their allowing claims to go upwards of three years without action are inexcusable. The IRS needs to immediately clear out all the old ERTC claims, put into place safeguards against fraudulent claims, and put into place technology that quickly processes legitimate payroll tax credits in a timely manner.

\* \* \* \* \*

Once again, NAPEO thanks the Oversight Subcommittee for holding this hearing. We ask for your continued attention to the ERTC backlog until every small business, including those that use a PEO, has received the ERTC funds for which it filed a claim and to which it is entitled.

We hope the information provided in our written statement is helpful to the Oversight Subcommittee. Should you have any questions, please contact Thom Stohler, NAPEO's Vice President of Federal Government Affairs.

Sincerely,

Pat Cleary
President and CEO
NAPEO

requests for aid are doing so with no ill intent, but simply because they were misled.

And I heard that the IRS is distributing information to make sure that we do not have these fraudulent claims and that we can identify them earlier. And I certainly hope that that can help in this process.

And I yield back.

Ms. Van Duyne. And the chair recognizes herself.

We have many roles here in Congress, and one that stands out the most important is providing constituent services and helping them weed through the never-ending bureaucratic tape.

But at the top of that list is the IRS. Nobody likes paying taxes, which is really made more painful when the IRS does not do its job. And that is what we are here looking at today.

Congress enacted the ERTC at the beginning of the pandemic to provide rapid tax relief to eligible employers who kept employees on the payroll despite being harmed by the pandemic.

The outdated IRS process that employers must use to claim the ERTC has not worked well, and it has contributed to the backlog of unprecedented unprocessed returns that resulted in many employers waiting 2 or more years, as we have heard today, for their claims to be processed.

And despite the fact that the IRS is making it difficult for legitimate claimants to receive their tax funds and tax returns, the IRS is doing a very poor job of preventing fraud. And, as of April 20, IRS Criminal Investigations initiated 122 investigations involving over $1.2 billion of potentially fraudulent ERTC claims for tax years 2020 to 2022.

Mr. Cleary, you have got your Heather. I have got my Deb.

Oh, is she going to play?   Oh, come on.

[Voicemail message played.]

Ms. Van Duyne.   Who wouldn't call back on this?

Chairman Schweikert.   Is her name Heather?

Ms. Van Duyne.   Her name is Deb.   I didn't have a Heather.   I have a Deb.

But it is amazing to me how many of these calls I have gotten.   And, by the way, I called back.   You answered the phone.   I called back today -- or I called back, and they still keep me on the list.   And I tell them who I am.   And, yes, while I may have employees, I guarantee you I am not eligible.   And they still keep me on that list.

So, we have learned that these ERTC mills have been approaching businesses and telling them that they qualify for the ERTC, even though some of these businesses were already told by their tax preparers that they don't qualify for the credit.

So how prevalent do you find this issue if I am getting calls and you are getting calls just this morning?   And do you think it has led to an increase in improper ERTC claims?

Mr. Cleary.   A hundred percent.   And to your question, like, who on Earth would call these people back?   The answer is simple:   desperate businesses.

Ms. Van Duyne.   Yeah.

Mr. Cleary.   So, on our website, "ERTC delays hurt small biz," there are just scores and scores and scores of first-person accounts of people who closed their business, moved their manufacturing operation, shut it down, refinanced their homes, gave up their pensions, everything for this.   They are desperate.

And that is why I said the easiest way to clear the -- or get rid of the mills is clear out the backlog.   People are desperate for the money.   They need it to stay alive.   And so, if I am going to wait and I don't know how long, because there is no way to find out where

my claim is, then I am going to call Heather back and say, "What can you get me?"

Ms. Van Duyne.   Yeah.

Mr. Cleary.   And that is real.   That is what is happening out here.

Ms. Van Duyne.   So, some of these ERTC mills offer refund anticipation loans, in which they loan employers a certain percentage of their expected ERTC refund and, in the meantime, charge them interest-only payments.

Would such a refund anticipation loan from an ERTC mill increase the level of risk that an employer is exposed to?

Mr. Cleary.   Well, sure, there is that.

And then the other problem we keep saying -- and, again, we have been shoulder to shoulder with the IRS in warning our members and make sure they warn their clients, like, don't get in bed with these people.

Because the other issue -- I think Roger alluded to it -- is, where are these folks going to be in a year?   So, when you get audited, where are they going to be?   Gone.

Ms. Van Duyne.   Gone.   They got their money and now they are gone.

Mr. Cleary.   Absolutely.   Cardboard stand in the airport, they folded the tent, and they went --

Ms. Van Duyne.   I have a quick question.   You had answered Ms. Tenney's questions a little bit about some of the struggles that they are going through to file their taxes.   But just as a follow-up, when Commissioner Werfel was here before this committee, he claimed that the IRS would process oldest claims first.

Mr. Cleary.   Yeah.

Ms. Van Duyne.   Have the PEO industry and their clients seen the oldest claims processed first?

Mr. Cleary.   No.   We have 4,000 claims from 2020 that we know about and

probably more than that. That is just a sampling of our members, less than half of our members that had 4,000 claims from 2020. So, no.

Ms. Van Duyne. What are they telling you? What does the IRS tell you when you call?

Mr. Cleary. Not a lot.

Ms. Van Duyne. All right. Well, thank you very much.

Mr. Cleary. Thank you.

Ms. Van Duyne. My time has expired.

Who am I recognizing next?

Oh, Mr. Schneider is recognized for 5 minutes.

Mr. Schneider. Thank you so much.

And thanks to the witnesses for sharing your stories. Obviously a lot here, and I appreciate you bringing your expertise to us.

I appreciate the work you do. I am the son of a CPA. I worked for him summers. I started my career at Pricewaterhouse on the consulting side, not the accounting or tax side.

Mr. Gray. Smart move.

Mr. Schneider. But I know what it was like. I worked for a local firm in Chicago. It was then Blackman Kallick. So I appreciate this.

Mr. Gray, you put something in your written testimony that struck me, struck me to the core, because you are saying you are hearing practitioners -- and my dad was a -- he worked with a firm, started out of college, became a partner. They sold that firm to a bigger firm, but then he left and started his own firm again. So I know what your firm is like, and I know what your clients are like.

You said there are practitioners giving up, saying they are done, that they are going

**BOSTON GROWTH PARTNERS**

United States House Committee on Ways and Means
1139 Longworth HOB
Washington, D.C. 20515

July 26, 2023

Dear U.S. House Committee on Ways and Means,

The July 27th hearing on the Employee Retention Tax Credit focuses on, in the Committee's words, "confusion, delays, and fraud." This is an unsettling description of the program, especially considering how small and medium businesses are relying on it for much needed and well deserved money. Boston Growth Partners, LLC, works firsthand to mitigate and prevent the aforementioned "confusion, delays, and fraud," as a consulting firm that specializes in the ERTC. Through Boston Growth Partners' unique understanding of the ERTC, we can offer the following insight:

*Confusion*
The ERTC was designed to be accessible for businesses, even if they had not been completely shut down by COVID-19 restrictions. In order to reach as many businesses as possible across many industries and states, the ERTC's language is vague. Unfortunately, this caused confusion among business owners and tax preparers alike. Even the name is misleading: it's not actually a tax credit, but instead based on the payroll of the business. There are few consulting firms that specialize in the ERTC, since it's such a new program, meaning it can be difficult for businesses to get sound advice on whether or not they qualify for the ERTC. The confusion amongst business owners can make them reluctant to apply at all. To make matters worse, the confusion amongst consulting firms that do not specialize in the ERTC can mean that businesses' applications could be prepared poorly, and/or not ask for the full amount that they're entitled to. The IRS's warnings to exercise caution when choosing a firm to help one apply for the ERTC are certainly not unreasonable, but they only further business owners' confusion and frustration. The IRS has good reason to warn business owners against fraudulent and predatory ERTC "tax mills," but has not provided much clear guidance on how businesses can and should find credible consultants.

*Delays*
Delays by the IRS are out of business owners' control, and to an extent, inevitable with such a large program. But a well-prepared and accurate form can reduce the amount of time the IRS needs to spend reviewing a business's application and parsing through details. Again, clearer guidance by the IRS on how to prepare the forms and/or how to find a credible consulting firm would result in more thorough, clearer applications, and potentially streamline the workload for the IRS once they receive the applications.

*Fraud*
Like with any program that offers financial benefit, the ERTC has invited fraud. The vast majority of business owners are not trying to commit fraud through the ERTC, and may be reluctant to

apply at all for fear of being investigated for fraud. The best way to avoid inadvertent fraud under the ERTC is to thoroughly prepare one's application. The more accurate and clear details demonstrating a business's eligibility, the better — but as mentioned before, many businesses are unsure of how they qualify and how to prove it. ==Further, the IRS's warnings about fraud, which have been picked up by major news outlets and read by prospective ERTC recipients, have generated fear and confusion. An article by a newspaper cautioning against fraud committed through the ERTC is unlikely to stop a determined fraudster who has already decided to commit the act, but will deter honest business owners from applying to the ERTC when they deserve it==. While the warnings by the IRS are important, there should be further guidance aimed at business owners who are honest and in great need of the ERTC's benefits.

*Suggested Questions for Witnesses*

The following are questions that Boston Growth Partners has generated, based on the company's experience with preparing ERTC forms for business owners.

1. Why are tax preparers solely being asked by the Agency to assess COVID-19-related eligibility? Are there better options for business owners, who need advice on real-world pandemic experience, particularly supply-chain interruptions, which are likely outside the skill and experience of the average tax preparer?
2. Why hasn't the Agency issued more authoritative guidance with more examples of how entities would legitimately meet the test of being partially suspended due to limitations in commerce, travel restrictions, group meetings, and an inability to obtain critical goods?
3. Since most small entities do not have the time or experience to prove eligibility and assess their impacts in a way that meets the vague standards, how would you suggest that the administrative burden be reduced thereby making the benefits more accessible?

We hope that this letter has stimulated productive discussion about the Employee Retention Tax Credit, as it is an important program for business owners and the American economy as a whole. We appreciate you taking the time to engage with our ideas, and look forward to seeing the results of this hearing.

Sincerely,

Michael Grosberg, President
Boston Growth Partners, LLC
25 Old Coach Road, Sudbury, MA 01776
mgrosberg@bostongrowthpartners.com



17220 KATY FRWY, STE. 350
HOUSTON, TEXAS 77094
TEL: (713) 784-1181
FAX: (713) 784-2705

July 27, 2023

House Committee on Ways & Means
WMSubmission@mail.house.gov

Re: **Hearing on The Employee Retention Tax Credit (ERTC) Experience and Related IRS Processing Backlog**

To Whom It May Concern:

My name is Stephen Calvert, and I am the Chief Legal Officer at G&A Partners. G&A is a large Professional Employer Organization (PEO) headquartered in Houston, Texas with offices and clients across the United States. PEOs partner with small and medium size businesses (SMBs) throughout the country to provide outsourced payroll, benefits, and human resource services through the co-employment model. G&A currently has thousands of such SMB clients and provides PEO services to roughly 90,000 worksite employees.

Data shows SMBs that partner with PEOs have better success and growth rates versus their peers, and that was particularly true during the pandemic crisis in 2020 and 2021. PEO-supported SMBs were more likely to stay in business and to keep people employed. One of the complex items that PEOs helped SMBs navigate during the pandemic crisis was the ERTC process. While PEOs were highly successful in assisting their SMB clients in filing the required returns, ==the backlog of processing such returns by the IRS has caused substantial harm to tens of thousands of SMBs in this country, including those who partner with PEOs. And that harm persists today.==

On July 27, 2023, the President of the National Professional Employer Association (NAPEO), Pat Cleary, is testifying about the impact of the ERTC backlog on SMBs and PEOs during a House Ways and Means Subcommittee on Oversight. The purpose of this correspondence is to provide a statement for the record on behalf of G&A in support of Mr. Cleary's testimony.

While the ERTC processing backlog has receded from its high-water mark of roughly one million a couple of months ago, it is still hovering near 500,000 and the processing rate is still inadequate. ==And because of the IRS's ongoing delays, SMBs are having to lay off workers, take on additional loans, or consider closing entirely.==

Of the tens of millions of dollars in ERTC outstanding for the SMB client companies of G&A, only a very small fraction has been processed by the IRS. We receive inquiries and complaints on a weekly basis from concerned SMB clients who are depending on the ERTC funds to remain in business. They followed the rules, filed for the credits in a timely basis through their PEO partnership with G&A, and are still waiting two years later for the necessary funding.

Several factors have contributed to the ongoing backlog of these unprocessed returns. One is that the IRS did not immediately begin processing the relevant forms—Forms 941-X. Another is that the IRS lacks trained staff, particularly staff that understand the PEO and co-employment relationship, which has caused additional delays and mishandling of claims. Another is that there was already a backlog of claims processing before the ERTC filings started to mount.

When SMBs and PEOs try to reach an IRS agent, by phone or in writing, to help sort through their issues, there is no response at all or a wholly inadequate response.

On behalf of PEOs and SMBs in general, and specifically on behalf of G&A and the thousands of clients and tens of thousands of American employees we serve, G&A adds this statement in support of NAPEO President Pat Cleary's testimony and urges the Committee to continue to bring appropriate oversight and pressure on the IRS to resolve the extensive ERTC backlog so that the SMBs that power this great nation can begin to thrive again.

Respectfully Submitted,

*[signature]*

Stephen Calvert

Chief Legal Officer
G&A Partners