Peter A. Arhangelsky, Esq. (SBN 291325)
peter.arhangelsky@gtlaw.com
GREENBERG TRAURIG, LLP
2375 E. Camelback Rd.
Suite 800
Phoenix, AZ 85016
Ph: (602) 445-8017
*Attorney for Plaintiff Stenson Tamaddon, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stenson Tamaddon, LLC<br><br>           Plaintiff,<br>v.<br><br>United States Internal Revenue Service, et al.,<br><br>           Defendants. | Case No. 2:24-cv-01123-SPL<br><br>**SUPPLEMENTAL DECLARATION OF ERIC STENSON IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hon. Steven P. Logan |

I, Eric Stenson, declare and state as follows:

1. I am the Chief Executive Officer of Stenson Tamaddon, LLC ("Stenson Tamaddon" or "StenTam"), the Plaintiff in the above-captioned action. The following statements are true and correct to the best of my knowledge and belief.

2. I earlier executed a declaration in support of Plaintiff's Motion for Preliminary Injunction (filed as Dkt. 14-1). In Paragraphs 57 through 60 of that declaration, I explained that the IRS's delay in processing ERC refunds will burden StenTam clients' ability to pursue amended income tax returns. I submit this supplemental declaration to clarify StenTam's injury associated with those compliance burdens.

3. The IRS Moratorium is creating significant professional liability and confusion for StenTam due to the requirement to amend *income tax* returns to account for the anticipated ERC refund.

4. The IRS requires taxpayers to file amended income tax returns to account for the anticipated ERC refund. In Notice 2021-49 (at page 24), the IRS explained:

> When a taxpayer claims the employee retention credit because of the retroactive amendment of section 2301 of the CARES Act by section 206(c) of the Relief Act (relating to eligibility of PPP borrowers to claim the employee retention credit) or otherwise files an adjusted employment tax return to claim the employee retention credit, the taxpayer should file an amended federal income tax return or administrative adjustment request (AAR), if applicable, for the taxable year in which the qualified wages were paid or incurred to correct any overstated deduction taken with respect to those same wages on the original federal tax return. Section 2301(e) generally provides, in relevant part, that rules similar to the rules of section 280C(a) of the Code shall apply. Section 280C(a) requires tracing to the specific wages generating the applicable credit. See, generally, Treas. Reg. § 1.280C-1. To satisfy this tracing requirement, the taxpayer must file an amended return or AAR, as applicable.

*See* IRS Notice 2021-49, *available at* https://www.irs.gov/pub/irs-drop/n-21-49.pdf.

5. Some of StenTam's clients have already amended their federal income tax returns to account for the anticipated ERC refunds. If the ERC refunds never materialize, and if StenTam does not preemptively amend those returns or file protective refund claims, our clients will have paid taxes based on the expected ERC credits. But because those clients will not receive the ERC, they will have paid excessive tax to the IRS that cannot be recovered.

6. The moratorium and unlawful narrowing of ERC eligibility criteria are creating collateral income tax uncertainties and liabilities for clients. Most StenTam clients are waiting for certainty in the ERC allowance (or disallowance) before amending their income tax returns, given that the IRS has publicly stated its intention to potentially disallow up to 70% of ERC claims. However, if a client eventually receives the payment and chose not to amend their prior year federal income tax returns due to this uncertainty,

they could still face civil fraud penalties for failing to amend the return and pay the tax within the statutory period.

7. The IRS has not provided any clear guidance to tax professionals on handling the corresponding federal income tax returns for our clients. StenTam will therefore need to begin amending its clients' federal income tax returns to account for potential lack of ERC, prepare protective refund claims without receiving compensation, and manage the fallout from IRS notices on tax delinquencies. Those delinquencies arise because clients owe taxes on the ERC but have not received the ERC funds.

8. In my earlier declaration, I outlined the additional, uncompensated work that StenTam will need to undertake. That includes preparing protective refund claims to safeguard our clients' interests and addressing any IRS notices regarding tax delinquencies.

9. That work is non-discretionary because, if StenTam fails to help its clients correct for these potential losses (that flow from the ERC submissions), StenTam could face liability risks. For example, My Store (a client of StenTam) has received levy notices from the IRS due to employment tax liabilities that should have been covered by the ERC credit. Our firm has been forced to assist with arranging forbearance from the IRS and delaying tax levies and seizing of assets pending the adjudication of its ERC claim, which is held due to the moratorium. StenTam does not receive compensation for that work.

10. I understand the IRS has argued that StenTam does not suffer financial losses from the Moratorium because its clients may receive interest payments from IRS on delayed refund claims. Stenson Tamaddon, LLC does not benefit from interest payments provided by the IRS on those outstanding ERC refunds. StenTam's original contracts with clients did not provide for recovery of its clients' interest on refunds.

11. Regardless of whether StenTam could benefit from interest in the long-term, the availability of interest would not offset irreparable losses for StenTam for at least two reasons.

12. First, the IRS is not presently making interest payments—or paying any money on outstanding ERC claims. So StenTam does not have the benefit of incoming money to offset its immediate losses.

13. Second, even if StenTam could recover a fraction of client interest payments, that would not compensate for the substantial losses the Moratorium causes. For example, StenTam must continue employment for staff serving ERC files despite the lack of incoming revenues from ERC claims during the Moratorium. StenTam would face irreparable harm if it terminated employees because it needs staff on hand to resume work when the Moratorium lifts. The IRS has refused to provide a clear date for lifting the Moratorium.

14. StenTam must maintain its practice support team and keep employees on staff who are authorized under Form 8821s to communicate with the IRS on behalf of specific clients.

15. The interest accrued on outstanding client refunds is significant in the aggregate, but StenTam does not collect for that in its invoices to clients and, even if it did, those amounts would not cover StenTam's losses.

I declarant under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 28th day of June, 2024:

*/s/ Eric J. Stenson*

Eric J. Stenson
Stenson Tamaddon, LLC
Chief Executive Officer

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

4
DECLARATION OF ERIC STENSON