AMY MATCHISON
KENTON MCINTOSH
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
Telephone:    (202) 307-6422
              (202) 514-3768
Fax:          (202) 307-0054
Email:  Amy.T.Matchison@usdoj.gov
        Kenton.McIntosh@usdoj.gov
        Western.Taxcivil@usdoj.gov

*Attorneys for United States of America*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stenson Tamaddon, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>United States Internal Revenue Service; the United States of America; United States Department of Treasury; Daniel Werfel, in his official capacity as Commissioner of the U.S. Internal Revenue Service; and Janet Yellen, in her official capacity as Secretary of the Treasury,<br><br>    Defendants. | Case No. 2:24-cv-01123-SPL<br><br>**UNITED STATES' REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT** |

i

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1
II. ARGUMENT .............................................................................................................. 1
   A.   STENTAM HAS NOT SHOWN THAT THE COURT HAS JURISDICTION OVER ITS CHALLENGE TO NOTICE 2021-20. ................................................................................ 1
      1.   *StenTam has not demonstrated Article III standing.* .............................................. *1*
      2.   *StenTam has not demonstrated prudential standing.* ........................................... *3*
      3.   *StenTam has not shown a waiver of sovereign immunity.* ..................................... 5
   B.   STENTAM STATES NOTHING TO CONTRADICT THAT NOTICE 2021-20 IS AN INTERPRETIVE RULE. ................................................................................................. 6
      1.   *Notice 2021-20 does not impose binding rules on regulated parties.* ..................... 6
      2.   *Notice 2021-20 does not have the force of law.* .................................................. *10*
         a)   Adequate Legislative Basis ....................................................................... 10
         b)   Explicit Invocation of Authority ................................................................ 11
         c)   Effectively Amends Prior Rule .................................................................. 11
   C.   STENTAM HAS NOT SHOWN THAT THE IRS ACTED ARBITRARILY OR CAPRICIOUSLY IN ISSUING NOTICE 2021-20. .................................................................................... 12
   D.   EVEN IF STENTAM PREVAILS, ITS REQUESTED RELIEF SHOULD BE DENIED. ............... 14
III. CONCLUSION ....................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AFL-CIO v. Ezell*,
  25-10276-GAO, 2025 WL 470459 (D. Mass. Feb. 12, 2025) .................................. 2, 6

*Alaska Dep't of Envtl. Conservation v. EPA*,
  540 U.S. 461 (2004) ............................................................................................... 12

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*,
  462 U.S. 87 (1983) ................................................................................................. 12

*Bob Jones Univ. v. Simon*,
  416 U.S. 725 (1974) ................................................................................................. 6

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988) ................................................................................................. 5

*Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*,
  419 U.S. 281 (1974) ............................................................................................... 12

*California v. Trump*,
  963 F.3d 926 (9th Cir. 2020) ................................................................................ 3, 4

*CIC Services, LLC v. IRS*,
  593 U.S. 209 (2021) ........................................................................................... 5, 12

*CIC Servs., LLC v. IRS*,
  592 F. Supp. 3d 677 (E.D. Tenn. 2022) ................................................................. 12

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ............................................................................................... 12

*F.E.R.C. v. Elec. Power Ass'n*,
  577 U.S. 260 (2016) ............................................................................................... 13

*FCC v. Fox Television Stations*,
  556 U.S. 502 (2009) ............................................................................................... 12

*Hemp Indus. Ass'n v. Drug Enf't Admin.*,
  333 F.3d 1082 (9th Cir. 2003) .......................................................................... 10, 11

*Hinck v. United States*,
  550 U.S. 501 (2007) ................................................................................................. 5

*Hoctor v. USDA*,
   82 F.3d 165 (7th Cir. 1996) .................................................................................... 7

*Lujan v. Nat'l Wildlife Fed.*,
   497 U.S. 871 (1990) ................................................................................................ 5

*Mann Constr., Inc., v. United States*,
   27 F.4th 1138 (6th Cir. 2022) ............................................................................. 8, 9

*Marsh v. Or. Nat. Res. Council*,
   490 U.S. 360 (1989) .............................................................................................. 12

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ................................................................................................ 3

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.*,
   463 U.S. 29 (1983) ................................................................................................ 12

*Sorenson v. Sec'y of Treasury of U.S.*,
   752 F.2d 1433 (9th Cir. 1985), *aff'd*, 475 U.S. 851 (1986) .......................................... 6

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................................ 3

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................................................ 3

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................................................ 1

*United States v. Clintwood Elkhorn Min. Co.*,
   553 U.S. 1 (2003) .................................................................................................... 6

**Statutes**

26 U.S.C. § 6001 ............................................................................................................. 11

26 U.S.C. §§ 6107, 6109(a)(4), 6694, 6695, 6713 .......................................................... 5

26 U.S.C. § 6662 ............................................................................................................... 9

26 U.S.C. § 6664 ............................................................................................................. 10

26 U.S.C. § 6707A(c) ................................................................................................. 9, 12

26 U.S.C. § 7203 ............................................................................................................... 9

26 U.S.C. § 7422 ........................................................................................................... 4, 5

26 U.S.C. § 7430 .................................................................................................... 5

Coronavirus Aid, Relief, and Economic Security Act Section 2301 ......................... *passim*

**Other Authorities**

26 C.F.R. § 1.6662-3(a) ............................................................................................ 9

26 C.F.R. § 1.6662-3(c)(2) ....................................................................................... 9

26 C.F.R. § 1.6694-2(b) ............................................................................................ 9

26 C.F.R. § 31.6001-1 ............................................................................................ 11

I.  **INTRODUCTION**

During the height of the pandemic, the IRS was tasked with implementing provisions of the CARES Act—a well-intentioned law with vague terms that cannot be administered absent agency guidance. That was evident to the public which began clamoring for IRS guidance from the start. Against this backdrop, the IRS issued Notice 2021-20, a 102-page explanation of how it interpreted the CARES Act's terms and how it would apply that understanding to its evaluation of ERC refund claims. The IRS issued its guidance not to discourage ERC claims, but to help businesses determine whether they were eligible to claim the limited credit. Providing the public with reasoned information it can rely on does not effect a change in law, convert IRS guidance into a legislative rule, or mean that the IRS acted arbitrarily or capriciously.

StenTam has not shown that this Court has jurisdiction to hear its challenge to Notice 2021-20, and even if it had, the Notice is a valid interpretive rule. The United States is entitled to summary judgment in its favor.

II. **ARGUMENT**

   A.  **StenTam has not shown that the Court has jurisdiction over its challenge to Notice 2021-20.**

      *1.  StenTam has not demonstrated Article III standing.*

This Court's finding that StenTam had standing to challenge the IRS's moratorium is not dispositive of whether StenTam has standing to challenge Notice 2021-20. Indeed, StenTam's now dismissed claim challenging the moratorium is altogether different from the challenge to the Notice, and StenTam must demonstrate anew that it has standing for both this claim and the relief it seeks. *See generally TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021).

Before, this Court concluded that the IRS's paused processing of certain ERC refund claims, and the resulting delayed potential payments to StenTam from allowed refund claims, was a sufficient injury-in-fact that was both traceable to the IRS's moratorium decision and redressable by the relief sought so as to demonstrate standing. ECF 34 at 7-11.

1

Now, StenTam is challenging the individual ERC claim disallowances that its clients have received, claiming these disallowances are caused by the Notice and result in StenTam suffering a cognizable injury. Neither is true. First, the Notice did not "cause" the disallowances because it does not have the force of law. *See* ECF 44 at 16-21. The Notice is simply guidance issued so the public can have the benefit of the IRS's interpretation of the CARES Act and approach to evaluating refund claims.[1] The Notice is not binding on StenTam, its clients, or any court that may hear a challenge to an IRS disallowance. Second, the Notice did not cause any economic injury StenTam may have suffered due to lack of payment of its clients' claims. Instead, any such injury results from how StenTam structured its own contracts, in that it relied for payment on the allowance of its clients' ERC claims, which was never assured under the law. StenTam thus cannot demonstrate standing because its "injury" is self-inflicted and illusory. *See AFL-CIO v. Ezell,* 25-10276-GAO, 2025 WL 470459, at *1-2 (D. Mass. Feb. 12, 2025) (unions lacked Article III standing to challenge agency action because their alleged harms were self-inflicted, and they could not establish they were directly impacted by agency action despite allegations of upstream economic effects). And, as the United States has explained, this alleged economic injury is neither traceable to the challenged Notice nor redressable by its vacatur. *See* ECF 44 at 11-12.

Also, until its most recent brief, StenTam's only alleged injury was that Notice 2021-20 would cause "the deprivation of payment for services, delayed receipt of those payouts, and increased compliance costs." ECF 39 at 2:24–25. But now, for the first time, it alleges a "procedural injury." ECF 47 at 4:10-11. This "procedural injury" supposedly results from the IRS's failure to follow notice-and-comment procedures and includes StenTam's "lost right

---

[1] StenTam's examples of disallowances based on the positions explained in the Notice are not evidence it has suffered an injury for purposes of demonstrating standing, even if the disallowances resulted in StenTam not getting paid for its services (i.e., because it does not receive a fee for a disallowed claim). *See* ECF 474:14-5:5. StenTam's standing analysis, and its business model suffer from the same fatal flaw—both are unreasonably premised on the IRS allowing every single ERC claim received. But Congress did not mandate that the IRS allow every single ERC claim filed. Instead, Congress tasked the IRS with allowing only claims meeting the statutory criteria.

2

1  of participation." *Id.* at 4:12-13. But this injury can exist only if the Court finds that the
2  Notice is a legislative rule subject to notice-and-comment rulemaking. So while StenTam
3  argues that the United States' standing argument improperly rests on the Court's finding in
4  its favor on the merits, the same can be said about StenTam's newly alleged procedural
5  injury. *See* ECF 47 at 3:20-4:1.

6  And while a procedural injury can constitute an injury in fact to establish standing,
7  not every procedural injury qualifies. To have standing, a plaintiff must establish a personal
8  stake in the underlying action. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496-97 (2009).
9  A "bare procedural violation, divorced from any concrete harm, [cannot] satisfy the injury-
10 in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Instead,
11 a plaintiff must show some connection between the procedural defect challenged and the
12 harm allegedly suffered from that defect. *Summers*, 555 U.S. at 496. "When a litigant is
13 vested with a procedural right, that litigant has standing if there is some possibility that the
14 requested relief will prompt the injury-causing party to reconsider the decision that allegedly
15 harmed the litigant." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).

16 Here, StenTam has not shown that the alleged procedural defect it is challenging, the
17 Notice not being subject to notice and comment, is connected to the disallowances of its
18 clients' refund claims and resulting nonpayment for its services. Even if the Court grants the
19 relief StenTam seeks, its clients would remain ineligible for the ERC not because the Notice
20 dictates that result, but because the relevant statutes do.

21       *2. StenTam has not demonstrated prudential standing.*
22 Likewise, the Court's finding that StenTam had prudential standing to challenge the
23 moratorium is not dispositive of whether StenTam also has prudential standing to challenge
24 the Notice. Again, it is StenTam's burden to satisfy Article III's standing requirements and to
25 demonstrate that its asserted interest is within the zone of interests to be protected or
26 regulated by the ERC statute that it claims has been violated. *See California v. Trump*, 963
27 F.3d 926, 941 (9th Cir. 2020). StenTam may satisfy this additional test "if it is among those
28 who Congress expressly or directly indicated were the intended beneficiaries of [the]

3

statute," or "if it is a suitable challenger to enforce the statute—that is, if its interests are sufficiently congruent with those of the intended beneficiaries that the litigants are not more likely to frustrate than to further statutory objectives." *Id.* at 941–42. This Court previously concluded that entities like StenTam were essential to Congress's ERC scheme, but that is not the proper inquiry. The inquiry should focus on "the particular provision of law upon which [StenTam] relies," rather than "the overall purpose of the Act in question." *California v. Trump*, 963 F.3d at 941.

Accordingly, this Court should reconsider whether StenTam is within the zone of interests to be protected or regulated by the ERC statute. As this Court recognized, the "statute intentionally created the ERC program for the benefit of [StenTam's] clients." ECF 34 at 12:15-16. It was not created for the benefit of tax professionals like StenTam, and it does not otherwise offer such entities protection or subject them to regulation. And although the United States agreed that "it is reasonable that a taxpayer would seek professional advice to determine whether they qualify for the ERC, and to determine whether and how to file," that is not an admission that StenTam's services "are essential in carrying out Congress' intent with respect to [its] clients." ECF 19 at 5:1-2; ECF 34 at 12:16-17. Congress created the ERC to encourage employers to keep employees on their payrolls, even in the face of government shutdown orders or declines to their gross receipts. Potentially eligible employers lie within the relevant zone of interests. Employees of potentially eligible employers may fall within the zone. But Congress did not enact the ERC to benefit entities that assist taxpayers.

Congress already provided a remedy to those within the statute's zones of interests. Any employer receiving a disallowance of its refund claim has a right to judicial review under 26 U.S.C. § 7422. That StenTam lacks such a remedy, because it is not the one who claimed the credit, does not compel the Court to permit StenTam to proceed under the APA. It means that StenTam is not the entity for whom the ERC and tax refund statutes were enacted.[2] Even if tax professionals are "essential" to the ERC program, this is not enough to

---

[2] StenTam suggests that the IRS lift the limitation in 26 U.S.C. § 7422 and extend standing in refund actions to interested third parties. ECF 47 at 7, n. 4. But the IRS

4

bring them within the zone of interests of the relevant statutes. *Cf. Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 883 (1990) (noting that, while court reporters would be harmed by a failure to comply with a statute requiring hearings "on the record," such a statute was enacted to protect the parties, and the reporters were outside the zone of interests).[3] Furthermore, the relief StenTam seeks here, universal vacatur of the Notice, is incongruent with the interests of ERC claimants (who are actually the intended beneficiaries of the statute and whose interests are not represented here) and the public in having an understanding of how the IRS interprets the relevant ERC authority and how it will apply that interpretation to refund claims. The causal connection is too attenuated to find prudential standing here.

      3. *StenTam has not shown a waiver of sovereign immunity.*

StenTam is careful to argue that it is not directly pursuing tax refunds in this case. *See* ECF 47 at 7:14-20. But that cannot obscure what StenTam is doing here—challenging the refund claim disallowances its clients have received without those clients having to file individual refund suits as Congress intended.[4] Indeed, that StenTam argues it has suffered an injury because of the disallowance of its clients' claims makes that objective clear.

Congress has provided specific rules for judicial review of tax determinations; those specific rules control over the more general rules for judicial review embodied in the APA. *See Hinck v. United States*, 550 U.S. 501, 506 (2007)*; Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). To that end, the Supreme Court has long held that claims for refund of an overpayment of tax can be asserted only in a refund suit. *See United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 5–8 (2003). Congress's statutory scheme also dictates that the

---

cannot convey standing in refund actions to interested third parties; only Congress can do that, which it has not.

[3] Congress makes clear when it intends to benefit professionals assisting taxpayers, *see, e.g.*, 26 U.S.C. § 7430, or regulate the tax preparation industry more broadly, *see, e.g.*, 26 U.S.C. §§ 6107, 6109(a)(4), 6694, 6695, 6713.

[4] StenTam cites *CIC Services, LLC v. IRS*, 593 U.S. 209 (2021), to argue that the United States has waived its sovereign immunity here. ECF 47 at 7:18-22. However, that case concerned application of the Anti-Injunction Act rather than a waiver of sovereign immunity.

5

administrative refund procedure, followed by a refund suit, is the exclusive remedy for taxpayers who seek to recover overpayments based on refundable credits. *Sorenson v. Sec'y of Treasury of U.S.*, 752 F.2d 1433, 1438 (9th Cir. 1985), *aff'd*, 475 U.S. 851 (1986). Because any of StenTam's clients whose refund claims have been disallowed may bring a refund suit, they have an adequate remedy in a court. *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 746 (1974). StenTam's challenge to the Notice is based on the disallowance of its clients' refund claims. It is thus exactly the type of challenge Congress intended for review within the statutory refund scheme. That StenTam itself is foreclosed from that scheme does not mean that adequate judicial review is lacking or that the APA provides a workaround. *See AFL-CIO v. Ezell,* 2025 WL 470459, at *2.

If, by this APA action, StenTam can have the Notice vacated and the IRS barred from applying what it believes is the correct interpretation of the law, then any tax professional could circumvent the comprehensive statutory tax refund scheme that Congress has put in place to handle tax challenges. StenTam's challenge to its clients' refund claim disallowances thus falls outside the APA's immunity waiver, and any attempt by StenTam to piggyback on its clients' claims and challenge any disallowance of them here must fail.

**B.    StenTam states nothing to contradict that Notice 2021-20 is an interpretive rule.**

   *1.  Notice 2021-20 does not impose binding rules on regulated parties.*

The parties agree that in considering whether the Notice is a legislative or interpretive rule this Court should look to whether the IRS intended to speak with the force of law. ECF 47 at 9:24-28. Although StenTam argues that the guidance is binding on its face, the plain text of the Notice makes clear that in offering the public guidance on how it interprets the CARES Act, the IRS did not intend to speak with the force of law. Indeed, the title of the Notice itself, "*Guidance* on the Employee Retention Credit Under Section 2301 of The Coronavirus Aid, Relief, and Economic Security Act," sets the tone. 2021 WL 807026, at *1 (emphasis added). From there, the first section of the Notice states its purpose: "This notice provides *guidance* on the employee retention credit []." *Id*. (emphasis added). The next

6

sentence begins, "The *guidance* provided in this notice addresses the employee retention credit []." *Id.* (emphasis added). This refrain repeats throughout the Notice—reminding all readers that the information provided is guidance based on the IRS's interpretation of the law.[5]

StenTam also argues that because the IRS applies its own guidance in evaluating ERC claims that the guidance is binding. ECF 47 at 10:2-7. But that the IRS is evaluating claims consistent with its expressed interpretation of the CARES Act does not mean the IRS has created binding law. Rather, it means the IRS has settled on what it believes is the correct interpretation of the law, informed the public of that interpretation, and applied that interpretation in the way the IRS told the public it would. Contrary to the sinister way StenTam portrays this process, it benefits employers and the public for agencies to share their interpretations of congressional action and then act consistently with those public statements.

StenTam also accuses the IRS of contriving its position on when an employer's business is partially suspended for purposes of this litigation. ECF 47 at 10:8-15. StenTam challenges whether the Notice reflects a safe harbor and allows for a facts and circumstances eligibility determination. *Id.* But the Notice itself, and the IRS's implementation of the guidance in it, support this understanding of the "partially suspended" guidance. To start, Congress limited the ERC by making it available only to eligible employers whose trade or business was fully or partially suspended because of a governmental order limiting commerce, travel, or group meetings due to the COVID-19 pandemic, or whose trade or business had a significant decline in gross receipts. To evaluate ERC claims for eligibility, the IRS had to interpret what Congress meant by "partially suspended." So the IRS explained

---

[5] StenTam again likens the facts here to those in *Hoctor v. USDA*, 82 F.3d 165 (7th Cir. 1996), and argues that "the Notice included no language confirming that the IRS standards were just rebuttable presumptions or guidelines that could be applied on a case-by-case basis." ECF 47 at 13:4-7. As explained, *Hoctor* is distinguishable. *See* ECF 44 at 20:26-21:24. Even so, StenTam is wrong. The Notice is explicit that it is offering the public its views as guidance, and the phrase "facts and circumstances" is used throughout.

7

that an employer "may be considered to have a partial suspension of operations *if, under the facts and circumstances,* more than a nominal portion of its business operations are suspended by governmental order." ECF 45 ¶ 15: AR 0971-72 (emphasis added). Further, that "a portion of an employer's business operations *will be deemed to constitute* more than a nominal portion of its business operations if the gross receipts from that portion of the business operations is not less than 10 percent of the total gross receipts" or "the hours of service performed by employees in that portion of the business is not less than 10 percent." (FAQ 11.) (emphasis added).

      Two things are immediately apparent from the plain language of the Notice. First, the IRS will consider the "facts and circumstances" in evaluating whether more than a nominal portion of an employer's operations were suspended. Second, the Notice states that "if" an employer's business has been partially suspended by a governmental order that has impacted more than 10 percent of its gross receipts or employee hours, the IRS *will deem* that employer eligible for the ERC. (FAQs 11, 17, 18); ECF 45 ¶ 15; AR 0971-72, 0978-84. This language on its face demonstrates that the 10-percent provision is a safe harbor. The Notice does not say, for instance, that the test "is met" (rather than be *deemed* to be met) "*only* if" these 10-percent levels are met. Taxpayers can thus rely on the IRS to allow their ERC claim if their gross receipts or employee hours have been impacted by that amount, but they can also assert that they still qualify under the facts and circumstances if they experienced a lesser suspension.[6]

      Finally, StenTam likens this case to *Mann Constr., Inc., v. United States*, 27 F.4th 1138 (6th Cir. 2022), and argues that a taxpayer's failure to comply with Notice 2021-20 could result in significant penalties. ECF 47 at 13:9-14:5. In *Mann*, the Sixth Circuit found that IRS Notice 2007-83, which designated certain types of transactions as "listed transactions" under 26 U.S.C. § 6707A(c), was a legislative rule. *Id.* at 1143. But the statute

---

[6] StenTam mischaracterizes the United States' position as being that the entire Notice is a safe harbor. ECF 47 at 10:13-14. The United States' position is not that the entire Notice is a safe harbor. The only safe harbor in the Notice is for what constitutes a more-than nominal impact on an employer's business or hours.

8

and notice at issue in *Mann* are different from what is before this Court. Section 6707A provides that taxpayers are generally required to disclose "reportable transactions," which are transactions the Secretary of the Treasury has determined have "a potential for tax avoidance or evasion," and "listed transactions," which are "the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction." 26 U.S.C. § 6707A(c)(1), (2). Failure to report those transactions subjects taxpayers to a civil penalty, *id.* § 6707A(a), and possible criminal sanctions under 26 U.S.C. § 7203. The IRS issued Notice 2007-83 to identify a particular type of transaction as a listed transaction under § 6707(c). 2007-45 I.R.B. 960, 2007 WL 3015114 (Oct. 17, 2007). The Sixth Circuit held that Notice 2007-83 had the force and effect of law because it created new substantive duties and failure to comply with the notice's reporting requirement could result in civil penalties and criminal sanctions. *Mann*, 27 F.4th at 1143.

Here, the Notice does not create any new substantive duties. As explained, all the challenged provisions merely interpret the criteria enumerated in the relevant statutes. ECF 44 at 5-9. And none of the CARES Act, § 3134, or Notice 2021-20 imposes penalties. Instead, the only way an ERC claimant could be subject to accuracy-related penalties under 26 U.S.C. § 6662 is the same way any other taxpayer filing a tax return making an inaccurate claim would be subject to a penalty—if they claim a tax treatment to which they are not entitled. But that is not because of Notice 2021-20, but by operation of a preexisting statutory duty that applies to all who negligently file inaccurate returns. And to the extent that taxpayers have a reasonable challenge to the interpretation in the Notice, that penalty is also subject to several exceptions that would allow them to attempt to claim the credit under that position while avoiding the penalty. *See* 26 C.F.R. § 1.6662-3(a) (stating that the penalty does not apply if a position contrary to a notice is adequately disclosed on Form 8275 or 8275-R, as defined in 26 C.F.R. § 1.6662-3(c)(2), or has a realistic possibility of being sustained on the merits, as defined in 26 C.F.R. § 1.6694-2(b)); *see also* § 1.6662-3(b)(2) (noting that a taxpayer who takes a position contrary to a revenue ruling or notice has not "disregarded" it if the contrary position has a realistic possibility of being sustained on the

9

merits); *see also* 26 U.S.C. § 6664 (providing a defense for reasonable cause).

        2.  *Notice 2021-20 does not have the force of law.*

The Ninth Circuit has articulated that there are three indicators a rule has the "force of law": (1) when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked its general legislative authority; or (3) when the rule effectively amends a prior legislative rule. *Hemp Indus. Ass'n v. Drug Enf't Admin.,* 333 F.3d 1082, 1088 (9th Cir. 2003). Although StenTam acknowledges the Ninth Circuit's three indicators, it downplays that analysis. ECF 47 at 14-15. But the Ninth Circuit binds this Court, and as the United States has explained, under this precedent, the Notice lacks the force of law. *See* ECF 44 at 17-21.

        a)  Adequate Legislative Basis

First, the Ninth Circuit has instructed that "if there is no legislative basis for enforcement action on third parties *without* the rule, then the rule necessarily creates new rights and imposes new obligations. This makes it legislative." *Hemp,* 333 F.3d at 1088 (emphasis added). The inquiry for this Court is thus whether *without* the Notice, there is a legislative basis for an enforcement action. The inquiry is not whether there is a basis to enforce the Notice without the Notice, as StenTam suggests. ECF 47 15:10. Here, if you set aside how the IRS has interpreted who is an eligible employer based on governmental orders and who has suffered a partial suspension of business operations as expressed in the Notice, there is still a legislative basis for a court to make those determinations. In any refund suit brought by a taxpayer whose ERC refund claim has been disallowed, the reviewing district court will determine, applying the statute, whether that ERC claimant is an eligible employer based on governmental orders and whether they suffered a partial suspension of their business operations. It will not apply Notice 2021-20.[7] And while it may determine that the

---

[7] Which is why the Notice does not have the force of law even though neither the CARES Act nor the statute refers to a nominal portion, a 10 percent safe harbor, or comparable business operations. Each is just the IRS's interpretation of what Congress meant when it created the ERC for eligible employers whose businesses had been partially suspended. Notice 2021-20 does not suggest that its interpretations are binding on taxpayers when seeking judicial review of any denied refunds. Whether Notice 2021-20 exists or not, the relevant statutes will control whether a refund is warranted.

10

IRS's interpretations were correct, it also may determine they were not. Either way, the statute contains a standard for the approval of claims apart from the IRS's interpretations.

Because the relevant statutes provide an adequate legislative basis for enforcement, the Notice does not have the force of law and is interpretive.

### b) Explicit Invocation of Authority

On the second factor, the parties also agree: the IRS did not invoke legislative authority in issuing the Notice. ECF 47 at 18:14; *see also* ECF 44:24:3-25:1. The Notice itself makes clear that the IRS did not invoke any delegation of legislative authority in issuing the Notice. Notice 2021-20, 2021 WL 807026, at *15. Because the IRS was clear that Notice 2021-20 was issued as non-binding guidance and there was no invocation of legislative authority, the Notice does not have the force of law. *See Hemp*, 333 F.3d at 1090 ("Since the DEA is not holding the rule out as having the force of law, the rule would merely be clarifying the enforceable statutory coverage").

### c) Effectively Amends Prior Rule

As explained, before the Notice, no prior legislative rules existed. *See* ECF 44 at 19:2-20:1. Yet StenTam keeps arguing that the Notice changed the statute by limiting rights and obligations. ECF 47 at 16:15-16. The United States agrees that an agency rule cannot amend a statute; the Notice did no such thing. To be sure, the Notice explains the IRS's understanding of which businesses impacted by the pandemic fit within the definition of "eligible employer" because of governmental orders and partial suspensions. But those explanations do not limit taxpayer rights, and taxpayers remain free to take contrary positions. And the Notice does not impose extra-statutory obligations—taxpayers have long been required by statute and duly promulgated regulations to substantiate any claim to a credit they make and maintain those records. *See* 26 U.S.C. § 6001; 26 C.F.R. § 31.6001-1.

Notice 2021-20 does not have the force of law and thus is not a legislative rule subject to notice-and-comment rulemaking. Rather, Notice 2021-20 is a valid interpretive rule properly excluded from the requirements of notice-and-comment rulemaking.

### C. StenTam has not shown that the IRS acted arbitrarily or capriciously in issuing Notice 2021-20.

The clearest expression of "arbitrary or capricious review" is set forth in *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins.,* 463 U.S. 29 (1983). Under this standard—also known as the "hard look" standard—a court may set aside agency action only where the agency: (1) relied on factors that Congress has not intended it to consider; (2) entirely failed to consider an important aspect of the problem; (3) offered an explanation for its decision that runs counter to the evidence before the agency; or (4) offered an explanation so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *See id.* at 43.

Review under the "arbitrary and capricious" standard is "searching and careful," but "narrow." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 377-78 (1989). *See also Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). The ultimate question under this narrow standard of review is whether the agency's action was reasonable. *FCC v. Fox Television Stations*, 556 U.S. 502, 514-15 (2009). In addition, courts should uphold a "decision [of] less than ideal clarity… if the agency's path may reasonably be discerned." *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004). *See also Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). The question is whether the agency's decision is "within the bounds of reasoned decisionmaking." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 105 (1983).

The APA requires, in other words, that agency action be reasonable, not perfect. Indeed, one cannot read the 102-page Notice with its 71 FAQs and many factual examples and conclude that the IRS didn't act reasonably in explaining to the public its interpretation of the CARES Act.[8] All that StenTam has offered this Court to show otherwise is

---

[8] StenTam analogizes the administrative record here to the one found deficient by the district court in *CIC Servs., LLC v. IRS*, 592 F. Supp. 3d 677, 684 (E.D. Tenn. 2022). StenTam seizes on that court's criticisms of that record as lacking in explanation of the facts and data necessary to comply with the APA. ECF 47:20:5-7. In the *CIC* Notice, the IRS identified a transaction "having a potential for tax avoidance." *See* 26 U.S.C. § 6707A(c)(1). The district court held that additional facts and data were required for the IRS to reasonably establish a transaction's tax avoidance potential. Here, the IRS simply

generalized statements that the Notice lacks explanations or facts and its conviction that its interpretations of the CARES Act would be superior. ECF 47 at 19:3-6.

StenTam has not alleged that the IRS relied on factors that Congress did not intend for it to consider. Indeed, despite having opportunity to do so, Congress has not acted to change any of the guidance in the Notice.[9] StenTam has not alleged that the IRS entirely failed to consider an important aspect of the problem, and the Notice itself demonstrates the IRS's comprehensive consideration of the issues. StenTam disagrees with where the IRS came out on certain distinct questions (what a partial suspension means, the impact of comparable business operations, the impact of supply chain disruptions, the impact of governmental orders directed to the public but not businesses), but it has not identified any aspect of the problem the IRS did not consider. Nor has StenTam alleged that the IRS offered an explanation for its decision that runs counter to evidence that was before it. Again, StenTam disagrees with some of the conclusions the IRS reached in the Notice, but it has not pointed to any evidence that was before the IRS that contradicts its guidance. Finally, StenTam has not alleged that the IRS has offered an explanation so implausible that it could not be ascribed to a difference in view or was the product of agency expertise.

Even if StenTam complains that the lack of notice and comment prevented the IRS from issuing a version of Notice 2021-20 shaped by its comments, those complaints are irrelevant. ECF 47:6:16-17. The Court is not charged here with asking whether the IRS issued the "best [notice] possible," or even one "better than the alternatives." *F.E.R.C. v. Elec. Power Ass'n*, 577 U.S. 260, 292 (2016). Rather, it must limit itself to determining whether the agency acted arbitrarily or capriciously in issuing the Notice. *Id.* So even if the

---

set forth its interpretation of statutory terms. No facts or data are required—or would even be relevant—for that analysis.

[9] Indeed, Congress *did* respond to an FAQ issued before the Notice: members of Congress informally wrote to the Treasury Secretary to disagree with the exclusion of health plan expenses from qualified wages. *See* Perma | [2020-05-07] Following Bipartisan Request, Treasury Modifies Employee Retention Tax Credit Eligibility for Employers Providing Health Benefits for Furloughed Employees | The United States Senate Committee on Finance. The IRS revised its FAQs to align with that letter, and Congress formalized this by amending the CARES Act to expressly include health plan expenses in the calculation of qualified wages.

13

IRS could have improved the Notice by incorporating suggestions from StenTam, it does not matter.

As shown in the United States' motion for summary judgment, Notice 2021-20 reflects reasoned decisionmaking. *See* ECF 44 at 21:26-24:1. The Court can discern from the text how and why the IRS arrived at its interpretations of the CARES Act. That is what the APA requires. Notice 2021-20 is not arbitrary or capricious.

**D.     Even if StenTam prevails, its requested relief should be denied.**

StenTam seeks a nationwide vacatur of Notice 2021-20 and an affirmative injunction prohibiting the IRS from applying its interpretation of the ERC as it relates to governmental orders, partial suspension, and substantiation. ECF No. 41-1. This Court should deny that relief because StenTam has failed to establish that the Notice is invalid. But if the Court is inclined to provide StenTam some relief, then it should limit that relief to StenTam and to the discrete parts of the Notice to which it objects to minimize disruption to the IRS's ability to process ERC claims. If the Court perceives a problem with the entire Notice, it should remand the guidance to the IRS. Because any problem with the guidance can be remedied on remand, the Court should leave it in place pending promulgation of a new or amended notice.

StenTam takes issue with only three of the Notice's 14 subject matters and just 10 of 71 FAQs, but still urges complete vacatur nationwide because the "rules are inextricably intertwined and cannot reasonably be separated." ECF 47 at 23-25. But this is not true. StenTam identified by number exactly which interpretations the IRS should be affirmatively prohibited from applying. If they were not so inextricably intertwined that StenTam can reasonably separate them, then so too can this Court.

And this is the result that fairness requires. It bears repeating, there are millions of taxpayers, not a party to this case, whose point of view StenTam does not represent. Indeed, many taxpayers have relied on the Notice's interpretations these last nearly four years since the IRS issued the Notice. Further, providing the taxpaying public with guidance on how the IRS interprets the law is beneficial and should not be discouraged.

### III. CONCLUSION

If StenTam is successful here, and the Court vacates the Notice and affirmatively enjoins the IRS from applying its interpretations of the law, all work on ERC refund claims will come to a screeching halt. And that work would remain halted while the IRS issues a new rule and subjects it to notice-and-comment. So while StenTam first sought relief from this Court because the IRS was not processing ERC claims quickly enough, now it seeks relief that would only further delay the IRS's ability to process claims. It doesn't make sense.

Regardless, the United States has shown that Notice 2021-20 is a valid interpretive rule. The United States is entitled to judgment in its favor.

DATED this 20th of February, 2025

*/s/ Amy Matchison*
AMY MATCHISON
Trial Attorney, Tax Division
U.S. Department of Justice